IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| AYAD S. LATIMORE,<br><br>*Plaintiff*,<br><br>v.<br><br>MIKAL JONES, *et al.*,<br><br>*Defendants*. | CIVIL ACTION NO.<br>3:24-cv-00026-TES |

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On March 12, 2024, Plaintiff Ayad S. Latimore filed a Complaint [Doc. 1-1] in the State Court of Clarke County, Georgia. Via 42 U.S.C. § 1983, Plaintiff asserts a *Monell* liability claim against the Athens-Clarke County Unified Government and a claim that several of its officers violated his right to be free from excessive force under the federal and Georgia Constitutions.[1] [*Id.* at ¶¶ 54–65]. Next, relying on Georgia law and the theory of respondeat superior, Plaintiff also asserts a claim for battery under O.C.G.A. §§ 51-1-13 and 51-1-14. [*Id.* at ¶¶ 66–68]. And finally, Plaintiff asserts claims for

---

[1] Since some of Plaintiff's claims arise under the Constitution and laws of the United States, the defendants who had been served—Defendants Unified Government of Athens-Clarke County, David Hardgrave, and Ethan Marsden (collectively "Defendants")—removed Plaintiff's lawsuit to federal court on April 12, 2024. [Doc. 1]; 28 U.S.C. § 1331. In addition to those defendants, Plaintiff also sued Mikal Jones, Ashley Cuellar (who is also known and sued as Ashley Morgan), Daniel Douglas, Greg Staley, and Steven Berardinelli when he initially filed his lawsuit in State Court, but he never served them. [Doc. 11, p. 2]. On an uncontested motion to dismiss for failure to serve, the Court dismissed those un-served defendants pursuant to Federal Rule of Civil Procedure 4(m) and terminated them as parties to this case. [Doc. 10]; [Doc. 11].

attorneys' fees pursuant to 42 U.S.C. § 1988 and O.C.G.A. §§ 9-11-68, 13-6-11, and 9-15-14. [*Id.* at ¶¶ 69–72].

## FACTUAL BACKGROUND[2]

At 3:57 a.m. on September 11, 2020, three officers from the Athens-Clarke County Police Department responded to a 911 call about unusual activity. According to that call, Plaintiff and his then-girlfriend, Gershavia Sims, had been sitting in his car for at least four hours outside of her apartment. When the officers approached the car, Ms. Sims voluntarily opened her door and spoke with one of them.[3] While she was speaking to that officer, Plaintiff appeared to reach under his seat. As soon as the officers noticed this, they instructed Plaintiff to make his hand visible. He refused.

Plaintiff also refused to provide his name or any identification, refused to roll down the car window, and refused to get out. Once the officers eventually got Plaintiff out of the car, he resisted arrest, saying, "I'm not giving y'all nothing" and "get the fuck

---

[2] The following facts largely come from Defendants' Statement of Undisputed Facts [Doc. 15-12, ¶¶ 31–47]. Plaintiff did not directly respond to Defendants' statement of facts and opted instead to provide his own. That, however, does not comply with Local Rule 56. Local Rule 56 clearly mandates that a party responding to a motion for summary judgment must respond to "each of the movant's numbered material facts." LR 56, MDGa. Further, it instructs that "[a]ll material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of . . . the record shall be deemed to have been admitted, unless otherwise inappropriate." *Id.* (emphasis added). By virtue of Plaintiff failing to respond to Defendants' statement of facts in accordance with Local Rule 56, all of Defendants' facts have been deemed admitted. *Gordon v. Bibb Cnty. Sch. Dist.*, No. 22-13286, 2023 WL 8253881, at *1–2 (11th Cir. Nov. 29, 2023) (affirming this Court's strict application of Local Rule 56). In any event, the Court still reviewed the relevant evidence and the arrest video in assessing the claims before it.

[3] [Doc. 15-9, Body Cam Video at 5:25–6:41].

away from my car." Because of his resistance and after repeated warnings, Plaintiff was tased. During the officers' search of the car, they found a small pistol.

## LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"The moving party bears the initial responsibility of informing the court of the basis for its motion." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991). The movant may cite to particular parts of materials in the record, including, "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1)(A). The movant may also provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

If this initial burden is satisfied, the burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice," and summary judgment cannot be defeated through bare and self-serving allegations. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *Hall v. Skipper*, 808 F. App'x 958, 959 (11th Cir. 2020) (citing *Stewart v. Booker T. Wash. Ins.*, 232 F.3d 844, 851 (11th Cir. 2000)).

## DISCUSSION

Although Plaintiff's Complaint lists claims against Athens-Clarke County Unified Government based on *Monell* liability and state law, he failed to respond to the merits of Defendants' summary-judgment arguments concerning those claims in his Response [Doc. 17-1]. *See* [Doc. 15-1, pp. 17–23]. To be sure, Plaintiff failed to address any argument whatsoever with respect to the Athens-Clarke County Unified Government. When a party fails to adequately brief claims in response to a motion for summary judgment, courts consider those claims abandoned. *Ajomale v. Quicken Loans, Inc.*, 860 F. App'x 670, 671 (11th Cir. 2021). Any claims Plaintiff did not adequately address regarding the Athens-Clarke County Unified Government have been abandoned, and the Court **GRANTS** Defendants' summary-judgment motion as to those claims. With that, the only federal law claim left is Plaintiff's excessive force claim.

The use of excessive force in making an arrest violates the Fourth Amendment. *Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998). The Supreme Court "has long recognized that the right to make an arrest . . . necessarily carries with it the right

4

to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Terry v. Ohio*, 392 U.S. 1 (1968). Indeed, in evaluating the use of force, a court's analysis must "embody allowance for the fact that . . . officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

The Eleventh Circuit instructs "[t]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Kesinger ex rel. Est. of Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004). The analysis reviews the totality of the circumstances, evaluating "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, and (3) the extent of the injury inflicted." *Draper v. Reynolds*, 369 F.3d 1270, 1277–78 (11th Cir. 2004).

Here, the officers' use of force to remove Plaintiff from the car and the use of a taser to effectuate the arrest were both reasonably proportionate to the "difficult, tense, and uncertain situation" they faced. *Id*. First, there is evidence that the area in which Plaintiff and Ms. Sims were parked is a high-crime area and is known for gang activity. [Doc. 15-11, Hardgrave Depo., pp. 12:22—13:4]; *cf. United States v. Hardy*, 806 F. App'x 718, 722 (11th Cir. 2020) (holding that reasonable suspicion existed where there was a

911 call about a suspicious vehicle in a high-crime area); *see also United States v. Graham*, 323 F. App'x 793, 798 (11th Cir. 2009) (holding that "the mere act of approaching [someone] in [a] parked car was permissible, regardless of whether the officers had reasonable suspicion of criminal activity"), *in connection with* [Doc. 17-1, p. 2 (Plaintiff's argument that "there was no evidence to suggest that [n]either [he nor Ms. Sims] were committing a crime")]. Second, the arrest video clearly shows Ms. Sims voluntarily speaking with one of the officers on her side of the car. *See Miller v. Harget*, 458 F.3d 1251, 1257 (11th Cir. 2006) (stating that officers do not violate the Fourth Amendment by "approaching a person in a parked car"); *United States v. Knights*, 989 F.3d 1281, 1286 (11th Cir. 2021) ("Officers are free to approach individuals on the street or in other public places and put questions to them if they are willing to listen.") (alterations adopted and citations omitted). And third, while Ms. Sims and the officer were talking, Plaintiff can clearly be seen with his hand under his seat. [Doc. 15-9, Body Cam Video at 4:57–6:41].

The officer speaking to Ms. Sims then repeatedly asked Plaintiff to take his hand from under his seat. [*Id.*]. Instead of complying, Plaintiff told the officers to get away from the car, and it was then they insisted he step out. [*Id.*]. At this point, for their own safety, the officers were permitted to ask Plaintiff to step out of the car without violating the Fourth Amendment. *Pennsylvania v. Mimms*, 434 U.S. 106, 110–11 (1977).

By Plaintiff's own admission, he testified that he "[d]idn't go freely" and was

6

"trying to stop [the officers] from putting [him] in handcuffs." [Doc. 15-10, Latimore Depo., pp. 43:1–16, 47:5–8]. Not only did Plaintiff refuse to give his name, any identification, or get out of the vehicle, but he also failed to follow commands. Clearly, "there was a reasonable need for some use of force in this [encounter]." *Draper*, 369 F.3d at 1278.

"[B]eing struck by a taser . . . is an unpleasant experience," but based on the evidence and facts presented, it was "reasonably proportionate to the need for force and did not inflict any serious injury." *Id.* To be sure, moments after the use of the taser, the arrest video shows Plaintiff coherent, yelling about his cellphone, and standing on his own. [Doc. 15-9, Body Cam Video at 11:43–12:40]. Therefore, under the totality of the circumstances, the officers' use of force—after ample, repeated warnings—was not excessive as it was "objectively reasonable under the circumstances." *Crenshaw v. Lister*, 556 F.3d 1283, 1293 (11th Cir. 2009). Accordingly, the Court **GRANTS** Defendants' summary-judgment motion with respect to Plaintiff's excessive force claim brought pursuant to § 1983.[4]

## **CONCLUSION**

Having disposed of Plaintiff's federal claims, only state law claims remain, and the Court isn't required to decide them. Federal courts may exercise supplemental

---

[4] The Court **DISMISSES** Plaintiff's claim for attorneys' fees pursuant to § 1988 **as moot** in light of its ruling as to his federal law claims. *Rhodes v. Stewart*, 488 U.S. 1, 2 (1988) (per curiam) ("There is no entitlement to attorney[s'] fees [under § 1988] . . . unless the requesting party prevails.").

jurisdiction over state law claims "in any civil action of which [they] have original jurisdiction." 28 U.S.C. § 1367(a). "[D]istrict courts may," however, "decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[S]tate courts, not federal courts, should be the final arbiters of state law," and when a federal court "has dismissed all federal claims from a case, there is a very strong argument for dismissal, especially where the federal claims are dismissed prior to trial." *Ingram v. Sch. Bd. of Miami-Dade Cnty.*, 167 F. App'x 107, 108 (11th Cir. 2006) (quoting *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997)). "[D]istrict courts may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Recognizing this, the Court declines to exercise supplementary jurisdiction over Plaintiff's remaining state law claims against Defendants in accordance with the discretion afforded to it by § 1367(c)(3).

Therefore, based on the above rulings, the Court **GRANTS** Defendants' Motion for Summary Judgment [Doc. 15], **REMANDS** Plaintiff's state law claims to the State Court of Athens-Clarke County, and **DIRECTS** the Clerk of Court to **ENTER** Judgment in Defendants' favor and **CLOSE** this case.

**SO ORDERED**, this 23rd day of April, 2025.

S/ *Tilman E. Self, III*
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**